## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
PEKAH WALLACE                 :    Civ. No. 3:19CV00391(SALM)
                              :
v.                            :
                              :
CHERYL SHARP and TANYA HUGHES :
                              :    February 11, 2022
------------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT [Doc. #59]

Plaintiff Pekah Wallace ("plaintiff") brings this action against defendants Cheryl Sharp ("Sharp") and Tanya Hughes ("Hughes") (hereinafter referred to collectively as the "defendants") pursuant to 42 U.S.C. §1983, alleging that defendants denied plaintiff equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. See Doc. #1 at 35. Plaintiff also asserts a state law claim for defamation against both defendants. See id. at 37.

Pending before the Court is defendants' Motion for Summary Judgment. [Doc. #59]. Plaintiff has filed a Memorandum of Law in Opposition to defendants' motion [Doc. #62], to which defendants have filed a reply [Doc. #63]. For the reasons stated below, defendants' Motion for Summary Judgment [**Doc. #59**] is **GRANTED, in part, and DENIED, in part.**

I.   **Procedural Background**

Plaintiff filed her complaint on March 14, 2019, asserting various federal and state law claims against defendants and the Connecticut Commission on Human Rights and Opportunities (hereinafter the "CHRO"). See Doc. #1. On March 26, 2020, Judge Michael P. Shea[1] dismissed all claims against the CHRO, as well as claims against the other defendants for: (1) retaliation based on plaintiff's exercise of free speech in violation of the First Amendment; (2) intentional infliction of emotional distress; (3) tortious interference with contractual relations; and (4) all claims against defendants in their official capacities for monetary damages. See generally Doc. #34.

Plaintiff now proceeds on her claims against defendants for denial of equal protection in violation of the Fourteenth Amendment (Count Three) and state law defamation (Count Six). See Doc. #1 at 35, 37; Doc. #34 at 25. Plaintiff's equal protection claim asserts that defendants "intentionally singled out [plaintiff] for adverse treatment that was entirely irrational and wholly arbitrary as compared to other Regional Managers similarly situated to" plaintiff. Doc. #1 at 35, ¶177. Her defamation claim asserts that defendants "knowingly,

---

[1] This case was transferred to the undersigned on October 15, 2021. [Doc. #64].

intentionally and maliciously publicized false statements, both

verbal and written, regarding [plaintiff] to, <u>inter alia</u>, the

Commissioners of the CHRO, which were harmful and injurious to

[plaintiff's] business reputation." Doc. #1 at 37, ¶191.

## II.   <u>**Legal Standard**</u>

> The standards governing summary judgment are well-
> settled. Summary judgment is appropriate only "if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits ...
> show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a judgment
> as a matter of law." Fed. R. Civ. P. 56(c)[.]

<u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir.

2002). Summary judgment is proper if, after discovery, the

nonmoving party "has failed to make a sufficient showing on an

essential element of her case with respect to which she has the

burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

(1986).

"The party seeking summary judgment has the burden to

demonstrate that no genuine issue of material fact exists."

<u>Marvel Characters</u>, 310 F.3d at 286. The moving party may

discharge this burden by "pointing out to the district court ...

that there is an absence of evidence to support the nonmoving

party's case." <u>Celotex Corp.</u>, 477 U.S. at 325. "In moving for

summary judgment against a party who will bear the ultimate

burden of proof at trial, the movant's burden will be satisfied

if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (emphases in original).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (citation and quotation

marks omitted). Where, as here, "a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Id. at 310 (quoting Fed. R. Civ. P. 56(e)). Therefore,

> [i]n order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that "set[s] forth specific facts" showing a genuinely disputed factual issue that is material under the applicable legal principles. Fed. R. Civ. P. 56(e); see, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004)[.] A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, see, e.g., Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996), or based on speculation, see, e.g., id. ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.")[.]

Major League Baseball, 542 F.3d at 310 (alterations added).

### III. **Facts**

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion for summary judgment. The following factual summary is based on plaintiff's Complaint [Doc. #1], defendants' Local Rule 56(a)(1) Statement of Material Facts [Doc. #59-1], plaintiff's Local Rule 56(a)(2) Statement of Material Facts

[Doc. #62-1], and accompanying affidavits, depositions and exhibits, to the extent that they are admissible evidence. The following factual summary, therefore, does not represent factual findings of the Court.

Before reciting the undisputed material facts, the Court notes defendants' argument that the Court should deem certain facts admitted because of: (1) plaintiff's improper objections; (2) plaintiff's failure to admit or deny certain facts; and (3) the insufficiency of the evidence cited to in support of a denial. See Doc. #63 at 2-4. Plaintiff has not responded to this argument. Generally, a responsive statement of material facts that contains "argument, legal conclusions, personal belief, and speculation[]" is "inappropriate." Martin v. Town of Simsbury, 505 F. Supp. 3d 116, 125 (D. Conn. 2020). To the extent plaintiff's Local Rule 56(a)(2) Statement contains inappropriate responses, or where it otherwise "does not comply with Local Rule 56(a)(3), the Court will deem admitted certain facts within Defendants' Local Rule 56(a)(1) Statement that are supported by the evidence in accordance with Local Rule 56(a)(1) for the purposes of resolving this motion." Id. (citation and quotation marks omitted). Therefore, unless otherwise noted, the following facts are either expressly undisputed or deemed admitted by plaintiff's failure to comply with Local Rule 56(a)(3).

The CHRO is a State civil rights organization, which has statutory authority to enforce human rights laws, including those related to employment discrimination. See Doc. #59-1 at 2, ¶¶5-6. Defendant Hughes has served as the executive director of the CHRO since 2013, and in that capacity "is responsible for managing the day to day operations of the CHRO," including "management of the CHRO's employees at all levels and locations." Id. at 3, ¶¶9-10. Defendant Hughes appointed defendant Sharp to serve as the Deputy Director of the CHRO in 2014. See id. at ¶12. Sharp continues to serve in that role. See id.

The CHRO is comprised of five offices -- one Central Office and four Regional Offices. See id. at 3-4, ¶13. Each Regional Office has a Regional Manager, who is responsible for supervising the staff and operations within that region. See id. at 4, ¶14. The Regional Managers are supervised by the CHRO Deputy Director, defendant Sharp. See id. at ¶15. Plaintiff acted as the Regional Manager of the CHRO's Capitol Region from 2013 until the time of her termination. See id. at ¶16; id. at 15, ¶81.

During her time at the CHRO, plaintiff received several counseling memorandums, and plaintiff also filed various

7

grievances/complaints regarding her performance evaluations and ratings. See Doc. #59-1 at 5, ¶26; id. at 7, ¶33; id. at 8, ¶37.

On May 1, 2017, defendant Sharp sent plaintiff a counseling memorandum regarding plaintiff's conduct towards defendant Sharp during the course of an investigation into plaintiff's treatment of a CHRO employee, Charles Perry. See Doc. #59-1 at 7, ¶33; Doc. #59-14 (Ex. L). Plaintiff asserts that the contents of this memorandum are "defamatory[.]" Doc. #62-1 at 8, ¶33; id. at 33-34, ¶15. The May 1, 2017, counseling memorandum was placed in plaintiff's personnel file. See Doc. #62-1 at 33, ¶14; see also Doc. #62-2 at 4, ¶16.

On May 4, 2017, defendant Sharp sent a counseling memorandum to plaintiff regarding the investigation of a complaint filed by Mr. Perry against plaintiff. See Doc. #59-1 at 8, ¶37; see also Doc. #59-15 (Ex. M). Plaintiff asserts that "the counseling memorandum contains defamatory conjecture that is solely the opinion of Sharp." Doc. #62-1 at 9, ¶¶38-39; see also id. at 35-34, ¶17. The May 4, 2017, counseling memorandum was placed in plaintiff's personnel file. See Doc. #62-1 at 34, ¶16; see also Doc. #62-2 at 6, ¶20.

The CHRO uses a "Performance Assessment and Recognition System ('PARS') ... to evaluate non-union managerial employees[,]" such as plaintiff. Doc. #59-1 at 4, ¶20. In

December 2017, defendant Sharp issued a PARS review stating plaintiff "needs improvement" that was placed in plaintiff's personnel file. Id. at 8, ¶40; see also Doc. #62-1 at 35, ¶18; Doc. #62-2 at 7, ¶22.[2] The parties dispute the accuracy of the information upon which this review was purportedly based. Defendants contend that this performance review was based on "data from reports generated by the CHRO's Case Tracking System[,]" which reflected that the "statutory deadlines in scheduling mandatory mediations were not met[]" in the Capitol Region. Doc. #59-1 at 8, ¶¶40-41. Plaintiff disagreed with this assessment, contending that Sharp's data was inaccurate, and offered to provide Sharp with information to support plaintiff's position. See id. at ¶¶43-44; id. at 9, ¶46; see also Doc. #59-16 (Exhibit N). Sharp offered to review plaintiff's information. See id. at 9, ¶44.

On December 15, 2017, plaintiff sent an email to Sharp with 101 CHRO case files "as evidence that Deputy Sharp's information was incorrect" and copied defendant Hughes on that email. Id. at ¶46; see also Doc. #59-16 (Ex. N). Given the contents and "tone" of plaintiff's email, including plaintiff's claim that Sharp was

---

[2] The parties dispute the role that defendant Hughes had in the December 2017 PARS. The Court discusses this dispute in its analysis of plaintiff's defamation claim.

engaging in "retaliation[,]" Doc. #59-16 at 1-2, Sharp referred the issues related to the December 2017 PARS to Neil Griffin of the State of Connecticut Department of Labor ("DOL") to determine whether plaintiff's conduct warranted any discipline. See Doc. #59-1 at 9, ¶48.[3]

Mr. Griffin investigated Sharp's complaint regarding plaintiff, and plaintiff's claims of retaliation by Sharp. See id. at ¶¶49-50. As part of that investigation, Sharp provided Mr. Griffin, at his request, with a copy of the 101 CHRO case files that plaintiff had sent to Sharp on December 15, 2017. See id. at 10, ¶¶51-52.

In connection with this investigation, Mr. Griffin interviewed plaintiff on January 19, 2018, in the presence of her attorney Miguel Escalera. See id. at ¶55. Mr. Griffin asked Attorney Escalera whether he needed to review copies of the 101 CHRO case files. See id. Defendants assert that Attorney Escalera "stated that he did not because he already possessed copies[.]" Id. at ¶56. Plaintiff denies this assertion. See Doc. #62-1 at 14, ¶56.

---

[3] The DOL provides human resources support for the CHRO. See Doc. #59-1 at 4, ¶17. At all times relevant to the allegations in the Complaint, Neil Griffin served as the Director of Human Resources at the DOL. See id. at ¶18.

At the conclusion of this meeting, Mr. Griffin contacted Hughes and Sharp to determine whether these case files contained confidential information. See Doc. #59-1 at 10-11, ¶58. Hughes and Sharp confirmed that these documents "did contain confidential information as the CHRO case file information is statutorily prohibited from disclosure to the public." Id. at 11, ¶59. It was then decided to investigate plaintiff's possible improper disclosure of the case file information to Attorney Escalera. See id. at ¶60.[4]

After consulting with Sharp, Mr. Griffin, a DOL Human Resources Specialist, and a representative of the State's Office of Labor Relations ("OLR"), Hughes decided to place plaintiff on administrative leave pending the investigation into plaintiff's possible disclosures of confidential case files. See id. at ¶¶61-63. Plaintiff was placed on paid administrative leave on January 30, 2018. See id. at 12, ¶67.

After plaintiff was placed on leave, and during the investigation, defendants accessed plaintiff's State-issued

---

[4] This fact is deemed admitted. Plaintiff denies this based on her declaration. See Doc. #62-1 at 15, ¶60. The paragraphs of the declaration cited to are not responsive to the statement proffered. See Doc. #62-2 at 11, ¶¶41-42. Further, plaintiff admits that an email uncovered in the investigation reflected that these documents had been sent by plaintiff to Attorney Escalera via blind copy. See Doc. #59-1 at 13, ¶74; Doc. #62-1 at 18, §74.

computer and "discovered that there was a significant number of non-work related stored information on the hard-drive and electronic-mail system." Doc. #59-1 at 12-13, ¶69. Plaintiff denies "that a significant number of non-work related stored information was discovered." Doc. #62-1 at 17, ¶69. One email discovered was the December 15, 2017, email from plaintiff to Sharp which attached the 101 CHRO case file documents. See Doc. #59-1 at 13, ¶74. Plaintiff blind copied Attorney Escalera on that email. See id.

At the conclusion of the investigation, Mr. Griffin reported his results to defendant Hughes and recommended that plaintiff's employment be terminated. See Doc. #59-1 at 14, ¶78; see also Doc. #63-2. After receiving the report, and consulting with the DOL and ORL, Hughes made the decision to terminate plaintiff's employment. See Doc. #59-1 at 15, ¶80.[5] Plaintiff was notified of this decision on April 6, 2018, by a letter signed by defendant Hughes. See id. at ¶81.

Plaintiff filed an appeal of her termination with the State of Connecticut's Employees Review Board ("ERB"). See Doc. #59-1

---

[5] Plaintiff denies that the decision to terminate her employment "was made upon advice and consultation with DOL and OLR because Sharp and Hughes purposefully singled out Wallace for selective treatment." Doc. #62-1 at 20, ¶80. Plaintiff's denial is improper argument. This statement of fact is therefore deemed admitted. See Doc. #59-1 at 15, ¶80.

at 17, ¶99; see also Doc. #55-11 (Exhibit I). The ERB held a

hearing on plaintiff's appeal over the course of three days in

2018, at which testimony and voluminous exhibits were

introduced. See Doc. #59-1 at 17, ¶100. Plaintiff was

represented by counsel at that hearing. See id. at ¶101.

On April 22, 2019, The ERB issued its decision on

plaintiff's appeal. See Doc. #59-11. The "central issues" before

the ERB were whether there

> (a) was sufficient evidence to find that the employer –
> The State of Connecticut – had met its burden of proof
> of establishing "just cause" to fire Ms. Wallace and (b)
> assuming there was "just cause", did the appellant meet
> her burden of proof (more probable than not) to show
> that Wallace's termination was in retaliation for
> "exercising her First Amendment rights" by speaking out
> against the use and dissemination of [certain] case
> closure statistics as well as being involved in certain
> other allegedly contentious situations.

Doc. #59-11 at 1 (sic); see also Doc. #59-1 at 18, ¶102. In her

post-hearing brief, plaintiff asserted, in pertinent part, that

the "selective enforcement" of Section 46a-83(j) and other CHRO

rules, which allegedly resulted in the arbitrary decision to

terminate her employment, violated the Equal Protection Clause.

See generally Doc. #63-1 at 14-17.

The ERB denied plaintiff's appeal. See Doc. #59-11; see

also Doc. #59-1 at 18, ¶103.[6]

---

[6] The Court takes judicial notice of the ERB decision. See Golden
Hill Paugussett Tribe of Indians v. Rell, 463 F. Supp. 2d 192,

IV.   **Discussion**

Defendants assert that the Court should grant summary judgment in their favor because: (1) administrative estoppel bars plaintiff's equal protection and defamation claims; (2) plaintiff cannot establish facts sufficient to establish her equal protection claim; and (3) plaintiff cannot establish facts sufficient to establish her defamation claim. See generally Doc. #59-2. Defendants also assert that they are entitled to qualified immunity on plaintiff's equal protection claim. See id. at 25-27.

Plaintiff asserts that there are genuine issues of material fact that prevent the entry of summary judgment on both of her remaining claims, and that administrative estoppel does not apply to preclude her claims. See generally Doc. #62. In reply, defendants contend that administrative estoppel is applicable to the ERB decision, and that plaintiff has failed to refute defendants' material facts on both the equal protection and defamation claims. See generally Doc. #63.

Before addressing the issue of administrative estoppel, the Court first pauses to note the law applicable to plaintiff's equal protection claim.

---

197 (D. Conn. 2006) ("Among the matters of which courts may take judicial notice are decisions of an administrative agency." (citation and quotation marks omitted)).

A.   Equal Protection

Count Three of the Complaint asserts a claim for "Denial of Equal Protection of the Laws in Violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983[.]" Doc. #1 at 35. Plaintiff asserts a claim for selective enforcement pursuant to LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980). See Doc. #19 at 13.

To prevail under this theory of selective enforcement, plaintiff "must show that (1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Martin, 505 F. Supp. 3d at 134-35 (citation and quotation marks omitted). "The LeClair type of equal protection claim requires proof of disparate treatment and impermissible motivation." Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019) (citation and quotation marks omitted). The Second Circuit has clarified that the "similarity standard" under "LeClair merely requires 'a reasonably close resemblance' between a plaintiff's and comparator's circumstances." Id. at 93. The circumstances "need not[] ... be identical. A plaintiff can prevail by showing that she was similarly situated in all

15

material respects to the individuals with whom she seeks to compare herself." Id. at 96 (citations and quotation marks omitted) (alterations added).

B.   Administrative Estoppel

Defendants assert that plaintiff's claims are estopped by two administrative decisions, one issued by the DOL's Employment Security Division, and the other by the ERB. See Doc. #59-2 at 4-15. Plaintiff contends that: (1) the DOL's proceedings cannot have preclusive effect, pursuant to Connecticut law; (2) plaintiff could not litigate her claims before the ERB, and thus res judicata does not apply; and (3) collateral estoppel does not apply because none of the issues decided by the ERB were identical to the issues in this action. See Doc. #62 at 18-24. In reply, defendants assert that with respect to the ERB decision, plaintiff "misconstrues the Defendant's (sic) administrative estoppel argument, ignores the facts and makes incorrect legal conclusions." Doc. #63.[7]

"[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the

---

[7] In reply, defendants withdraw "as a basis for their Motion for Summary Judgment ... arguments, 56(a)(1) statements, and exhibits relating to the Plaintiff's unemployment claim as they have no preclusive effect." Doc. #63 at 1 (citing Conn. Gen. Stat. §31-249g(b)). Accordingly, the Court does not address this aspect of defendants' argument further.

parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986); accord Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 728 (2d Cir. 2001) ("[I]n §1983 actions, the factual determinations of a state administrative agency, acting in a judicial capacity, are entitled to the same issue and claim preclusive effect in federal court that the agency's determinations would receive in the State's courts.").

For the ERB decision to have preclusive effect, the Court must find that a Connecticut State court would give the ERB decision preclusive effect, and that: "(1) [the ERB] acted in a judicial capacity; (2) [the ERB] resolved disputed issues of fact properly before it; and (3) the parties had a full and fair opportunity to litigate the relevant factual issues." Jackson v. AFSCME Loc. 196, No. 3:07CV00471(JCH), 2010 WL 1286771, at *7 (D. Conn. Mar. 29, 2010); see also Scott v. Goodman, 961 F. Supp. 424, 431 (E.D.N.Y. 1997). The Court first considers whether the ERB acted in a judicial capacity.

1.   *The ERB Acted in a Judicial Capacity*

Following the termination of her employment, plaintiff filed an appeal with the ERB. See Doc. #59-1 at 17, ¶99. A

Connecticut State employee, such as plaintiff, "who is not
included in any collective bargaining unit of state employees
and who has achieved a permanent appointment [as statutorily
prescribed]," may appeal certain adverse employment actions,
including termination, to the ERB. See Conn. Gen. Stat. §5-
202(a).[8]

Once the ERB receives an appeal, it will "assign a time and
place for a hearing and shall give notice of such time and place
to the parties concerned." Conn. Gen. Stat. §5-202(c). The ERB
is "bound by technical rules of evidence prevailing in the
courts." Id. "If, after hearing, a majority of the hearing panel
determines that the action appealed from was arbitrary or taken
without reasonable cause, the appeal shall be sustained;
otherwise, the appeal shall be denied." Id.

Connecticut General Statutes section 5-201 sets forth the
procedures applicable to ERB proceedings:

> The board or hearing panel shall have the power to
> administer oaths and affirmations, certify to all
> official acts, issue subpoenas and compel the attendance
> and testimony of witnesses and the production of
> records, papers and documents and to make investigations
> and hold hearings concerning any appeal presented to the
> board in accordance with this chapter or regulations
> issued pursuant thereto. ... The board shall adopt as a
> regulation, in accordance with the provisions of chapter
> 54, rules of procedure for hearings.

---

[8] Plaintiff does not dispute that the ERB had jurisdiction over
her appeal. See Doc. #59-11 at 1.

Conn. Gen. Stat. §5-201(b) (footnote omitted).[9] Here, "[t]he ERB held hearings over three days in 2018 where there was oral testimony and a voluminous number of exhibits introduced." Doc. #59-1 at 17, ¶100. Plaintiff and the State were each represented by counsel at those proceedings. See id. at ¶101.

Based on the foregoing, the Court finds that the ERB employs procedures substantially similar to those used by a court of law, and acts in at least a quasi-judicial capacity. See, e.g., Delamater v. Schweiker, 721 F.2d 50, 53 (2d Cir. 1983) ("An action taken by an administrative agency to grant or deny a benefit is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts."); Martin v. Shell Oil Co., 198 F.R.D. 580, 588 (D. Conn. 2000) ("In order to be adjudicative, the administrative agency must make its decision using procedures substantially similar to those employed by the courts." (citation and quotation marks omitted)); Scott, 961 F. Supp. at 432 (finding that a similar New York State agency, which employed procedures nearly identical to those used by the ERB, "acts in a quasi-judicial capacity[]"); Magnan v. Anaconda Indus., Inc., 429 A.2d 492, 493 (Conn. Super. Ct. 1980) ("Those

---

[9] Chapter 54 of the Connecticut General Statutes codifies the Uniform Administrative Procedures Act. See Conn. Gen. Stat. 4-166, et seq.

administrative agencies which are called upon to weigh evidence and to reach conclusions have been defined as acting in a quasi-judicial capacity." (citation and quotation marks omitted)). As a general rule, the ERB acts in a judicial capacity. There is no suggestion that in this case the ERB acted any different than it usually would, or that plaintiff did not have full access to the ERB's proceedings. Accordingly, the "judicial capacity" requirement has been satisfied.

> 2. *The ERB Resolved Issues of Fact Properly Before It*

The Uniform Administrative Procedures Act, codified at Chapter 54 of the Connecticut General Statutes, and incorporated by reference in section 5-201, provides:

> A proposed final decision made under this section shall be in writing and contain a statement of the reasons for the decision and a finding of facts and conclusion of law on each issue of fact or law necessary to the decision, including the specific provisions of the general statutes or of regulations adopted by the agency upon which the agency bases its findings.

Conn. Gen. Stat. §4-179(b); see also Conn. Gen. Stat. §5-201(b).

Here, the ERB resolved issues of fact related to plaintiff's selective enforcement claim. The ERB specifically considered whether there was "sufficient evidence to find that the employer – the State of Connecticut – had met its burden of proof establishing 'just cause' to fire" plaintiff. Doc. #59-11 at 1; see also Doc. #59-1 at 18, ¶102. Plaintiff asserted in her

post-hearing briefing to the ERB that the "selective enforcement" of Section 46a-83(j) and other CHRO rules resulted in an arbitrary decision to terminate her employment in violation of the Equal Protection Clause. See generally Doc. #63-1 at 14-17. The Memorandum of Decision issued by the ERB contains over three pages of factual findings and specifically rejected plaintiff's "defense" of selective enforcement. See Doc. #59-11 at 2-5; 6-7. Accordingly, based on the detailed findings of fact set forth in the ERB's decision, the Court finds this element satisfied as to plaintiff's selective enforcement claim.

The ERB did not, however, resolve issues of fact relating to plaintiff's defamation claims, which arise from two 2017 memorandums of counseling and one 2017 PARS. See Doc. #62-1 at 33-34. These events are not addressed in the ERB's decision. Although the ERB made reference to plaintiff's 2017 PARS, and plaintiff's claim that the data underlying that PARS is false, the ERB did not address the question of whether the publication of the 2017 PARS to plaintiff's personnel file was defamatory. See generally Doc. #59-11. Accordingly, administrative estoppel does not preclude plaintiff's defamation claim.[10]

---

[10] Additionally, plaintiff did not have a full and fair opportunity to litigate her defamation claim before the ERB. The ERB decision examined whether defendants had just cause to

3.   *Plaintiff had a Full and Fair Opportunity to Litigate the Issue of Selective Treatment before the ERB*

"Perhaps the paramount consideration in a determination of whether a party had a full and fair opportunity to litigate in the previous action [is] the party's incentive to litigate in that action." Jackson, 2010 WL 1286771, at *7. Plaintiff had every incentive to vigorously litigate the decision to terminate her long-time employment, and she did so. Indeed, the evidence establishes that plaintiff was represented by counsel at the ERB hearing, which occurred over three days and involved numerous witnesses and voluminous exhibits. See Doc. #59-1 at 16, ¶100-101; see also Doc. #59-11 at 1.

Plaintiff asserted in her post-hearing briefing to the ERB that the "selective enforcement" of Section 46a-83(j) and other CHRO policies, which allegedly resulted in the arbitrary decision to terminate her employment, violated the Equal Protection Clause. See generally Doc. #63-1 at 14-17. Plaintiff raised the same issues before the ERB as she does here. Compare Doc. #1 at 30, ¶150 ("Hughes, Sharp, and Griffin did not

---

terminate plaintiff's employment, and not the circumstances surrounding plaintiff's claims of defamation. Compare Doc. #59-11, with Doc. #1. "Defendants, who bear the burden" on this issue, have not shown that the defamation issues were "previously litigated and decided." Olson v. State of New York, No. 04CV00419(DRH)(MLO), 2005 WL 5885368, at *3 (E.D.N.Y. Mar. 9, 2005).

discipline themselves or terminate their own employment for violating Connecticut General Statute Section 46a-83(j)[.]"), with Doc. #63-1 at 15 ("Wallace has presented evidence that she was punished for violating Section 46a-83(j), while Sharp and Hughes, who violated the same statute, were not, and that the discipline was motivated by the intent to punish Wallace for having exercised her constitutional right to speak out against the use and dissemination of inaccurate case closure statistics. This was a violation of Wallace's equal protection rights and this arbitrary and without reasonable cause."). She also argued to the ERB that "[t]erminating [plaintiff] for allegedly violating the CHRO's email and use of state equipment policies is also arbitrary and without reasonable cause, because the policies are not uniformly enforced." Doc. #63-1 at 16. In support of this "defense," plaintiff contended that "[o]n two occasions, both Hughes and Sharp were made aware of an employee conducting a side business on state time, using his state computer[,]" but that "employee was not investigated, nor was any discipline handed out." Id. Plaintiff asserted to the ERB:

> This is another case of selective enforcement of the rules by the CHRO, in violation of [plaintiff's] equal protection rights. Once again she has presented evidence of a similarly situated employee who was not disciplined, and that the differential treatment was based on an impermissible motive, retaliation for having complained about the use and dissemination of incorrect case closure statistics.

Id. at 17. These allegations are also set forth in the federal
Complaint. See generally Doc. #1 at 16-17, ¶¶67-74; id. at 31,
¶¶154-55; id. at 35, ¶177.

The Court finds that plaintiff had a "full and fair"
opportunity to litigate the issue of selective enforcement. See
Olson v. State of New York, No. 04CV00419(DRH)(MLO), 2005 WL
5885368, at *3 (E.D.N.Y. Mar. 9, 2005) (finding full and fair
opportunity to litigate where 2 days of hearings were held, "at
which testimony was taken from numerous witness including the
Plaintiff, and exhibits were accepted into evidence[;]" "post-
hearing briefs were filed[;] and "Plaintiff was represented by
counsel throughout the proceeding[]").

The Court next examines whether the Connecticut State
courts would give preclusive effect to the ERB factfinding.

> 4.  *Connecticut Law Would Give Preclusive Effect to
>     the Factfinding of the ERB on the Issue of
>     Selective Treatment*

At the outset, the Court notes that defendants do not
differentiate between the doctrines of collateral estoppel and
res judicata.

> Claim preclusion (res judicata) and issue preclusion
> (collateral estoppel) have been described as related
> ideas on a continuum. Claim preclusion prevents a
> litigant from reasserting a claim that has already been
> decided on the merits. Issue preclusion, prevents a
> party from relitigating an issue that has been
> determined in a prior suit.

24

Nancy G. v. Dep't of Child. & Fams., 733 A.2d 136, 143 (Conn. 1999) (citations and quotation marks omitted). The Court construes defendants' briefing as asserting that collateral estoppel prevents plaintiff from relitigating the issue of whether "the [plaintiff], compared with others similarly situated, was selectively treated[.]" Martin, 505 F. Supp. 3d at 134-35; see also Doc. #59-2 at 11-14. The Court does not find that res judicata bars plaintiff's selective enforcement claim because this claim was not previously decided on the merits by the ERB. Rather, plaintiff raised the issue of selective enforcement as a defense to her termination before the ERB. Accordingly, the Court considers whether the doctrine of collateral estoppel applies to the issue of selective enforcement, and specifically, whether plaintiff, was selectively treated compared to other similarly situated persons.

Connecticut courts will give preclusive effect to an agency's factfinding only if that factfinding was subject to judicial review. See Convalescent Ctr. of Bloomfield, Inc. v. Dept. of Income Maint., 544 A.2d 604, 611 (Conn. 1988). A person "who is aggrieved by a final [agency] decision may appeal to the Superior Court[.]" Conn. Gen. Stat. §4-183(a). Here, plaintiff had a right to appeal the ERB decision to the State Superior

Court, but did not. See Doc. #59-6, Jan. 21, 2021, Wallace
Deposition Transcript ("Wallace Tr."), at 63:4-7.

"For an issue to be subject to collateral estoppel, it must
have been <u>fully and fairly litigated in the first action</u>. It
also must have been actually decided and the decision must have
been necessary to the judgment." <u>Lafayette v. Gen. Dynamics
Corp./Elec. Boat Div.</u>, 770 A.2d 1, 9 (Conn. 2001); <u>see also
Golino v. City of New Haven</u>, 950 F.2d 864, 869 (2d Cir. 1991)
("Under Connecticut law, for an issue to be subject to
collateral estoppel, it must have been fully and fairly
litigated in the first action. It also must have been actually
decided and the decision must have been necessary to the
judgment." (citation and quotation marks omitted)).
Additionally, "for collateral estoppel to bar the relitigation
of an issue in a later proceeding, the issue concerning which
relitigation is sought to be estopped must be identical to the
issue decided in the prior proceeding." <u>New England Ests., LLC
v. Town of Branford</u>, 988 A.2d 229, 245 (citation and quotation
marks omitted); <u>see also</u> <u>Caro v. Weintraub</u>, No.
3:09CV00353(PCD), 2011 WL 13233935, at *7 (D. Conn. Oct. 25,
2011) ("Collateral estoppel requires, among other elements,
identity of issues." (citing Connecticut law)). "Thus, to
successfully assert the doctrine of collateral estoppel, a party

26

must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." Sadler v. Lantz, No. 3:07CV01316(CFD), 2010 WL 3418127, at *2 (D. Conn. Aug. 20, 2010) (citation and quotation marks omitted).

For reasons previously stated, the issue of whether plaintiff was selectively treated as compared with others similarly situated was fully and fairly litigated before the ERB. See Section IV.B.3., supra. The Court next considers whether the issue of selective enforcement, and more specifically whether plaintiff was selectively treated as compared with others similarly situated, was "actually decided" and "necessary to the judgment." Lafayette, 770 A.2d at 9.

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." New England Ests., 988 A.2d at 244 (citation and quotation marks omitted). The issue of whether plaintiff was selectively treated in violation of the Equal Protection Clause, and specifically the issue of her alleged comparators, was "actually decided" by the ERB. As previously discussed, plaintiff raised the issue of selective enforcement in the ERB post-trial briefing as a defense to the claim that her

termination was based on reasonable cause. See Doc. #63-1 at 14-17. She also specifically contended that she had "presented evidence of a similarly situated employee[.]" Doc. #63-1 at 17; see also id. at 16. The ERB rejected those claims, finding plaintiff had failed to present evidence of a similarly situated employee. See Doc. #59-11 at 6-7; see also Doc. #59-1 at 18, ¶106.[11] Accordingly, the issue has been "actually decided" by the ERB.

The Court next considers whether the determination of the selective treatment issue was "necessary to the judgement" of the ERB. "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." New England Ests., 988 A.2d at 244 (citation and quotation marks omitted); see also Zanker Grp. LLC

---

[11] Plaintiff denies that "[t]he ERB rejected Ms. Wallace's claim that she was similarly situated to other employees who utilized the State's email system and resources for personal use due to the volume and frequency of use by Ms. Wallace for non-work related purposes." Doc. #62-1 at 27, ¶106. Plaintiff denies the statement "because the plaintiff never presented nor did the ERB review any claim of selective enforcement and denial of Equal Protection made by the plaintiff." Id. Although plaintiff did not affirmatively state a claim for an equal protection violation before the ERB, she did explicitly raise the issue of selective enforcement as a defense to the State's bases for her termination. See generally Doc. #63-1. The ERB decision rejected that defense. See generally Doc. #59-11 at 6-7. Accordingly, despite plaintiff's denial, there is no genuine dispute that the ERB rejected plaintiff's defense that she was selectively treated compared to other employees who used the State's email system and other resources for personal use.

v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Pro. Corp., No.
3:05CV01945(SRU), 2008 WL 2756876, at *4 (D. Conn. July 14,
2008) (For collateral estoppel to apply, "the issue previously
litigated" must have been "necessary to support a valid and
final judgment on the merits[.]").

The primary issue before the ERB was whether there "was
sufficient evidence to find that the employer – the State of
Connecticut – had met its burden of proof of establishing 'just
cause' to fire" plaintiff. Doc. #59-11 at 1; see also Doc. #59-1
at 18, ¶102. The State based its claim of "just cause" on three
alleged incidents, including, in relevant part: "(1) that
[plaintiff] disseminated what is otherwise confidential CHRO
case information statutorily protected by CGS Section 46a-
83(j)[;] and "(2) That [plaintiff] 'routinely' used her State
computer and State email and State time to send and receive
personal emails that had no relation to her role as manager at
CHRO in violation of State policies, rules and regulations[.]"
Doc. #59-11 at 2 (sic). In her post-hearing brief, plaintiff
asserted: "None of these proffered reasons constitute 'just
cause' for [plaintiff's] termination." Doc. #63-1 at 12. In
support of that assertion, plaintiff specifically argued: (1)
the selective enforcement of Connecticut General Statutes
section 46a-83(j) "was a violation of [plaintiff's] equal

29

protection rights" and the "epitome of arbitrary and without reasonable cause[,]" id. at 15, 16; and (2) "the selective enforcement of the CHRO's email and use of state equipment policies renders the decision to terminate [plaintiff] arbitrary and without reasonable cause." Id. at 17. For those reasons, among others, plaintiff contended that her appeal should be sustained. See id.; see also id. at 21 ("Wallace was not terminated for just cause. Rather, the CHRO chose, after several years of harassing and retaliating against Wallace, to selectively enforce its statutes, rules and regulations in order to punish her for exercising her Frist Amendment rights[.] ... Such punishment not only is arbitrary and without reasonable cause, it also violates Wallace's right to equal protection under the law. ... For all these reasons, Wallace's appeal should be sustained, and she should be reinstated to her position as Regional Manager of the Capitol Region with full back pay, benefits and seniority.").

    The ERB concluded:

1. The State met its burden of proof to show that it had "just cause" to terminate Wallace.

2. The single insubordinate incident of January 29, 2018, was sufficient in and of itself to justify a state agency to rid itself of such an obstinate, contentious and combative employee.

3. The finding that Wallace, over a period of time, abused the proper use of her State-owned computer to

30

> send and receive voluminous emails in no way related
> to State business, independently is just cause for
> the termination of that individual.
>
> 4. Wallace violated the prohibitions of the relevant
>    confidentiality statute Section 46a-83j.
>
> 5. The wholesale violation of Section 46a-83j C.G.S. may
>    not in and of itself constitute just cause for
>    termination of an employee, but when combined with
>    two other demonstrably adequate bases for
>    termination, as it is, makes the basis for termination
>    irrefutable.

Doc. #59-11 at 8-9. The ERB would not have been able to conclude

that there was just cause to terminate plaintiff from her

employment if it had found that statutes, rules, and policies

had been selectively enforced against her. Indeed, the ERB

specifically rejected such arguments in its findings. See id. at

6-7, 8-9. Thus, without the rejection of plaintiff's selective

enforcement defense, plaintiff's appeal could not have been

denied.

Finally, the Court considers the "identity of issues."

Caro, 2011 WL 13233935, at *7. To make this determination, "the

court must determine what facts were necessarily determined in

the first trial, and must then assess whether the party is

attempting to relitigate those facts in the second proceeding."

New England Ests., 988 A.2d at 244 (citation and quotation marks

omitted).[12] Plaintiff asserts: "Although some of the issues raised in the ERB proceedings may have been similar to the issues in this case, ... similarity is not enough for the application of collateral estoppel under Connecticut law[.]" Doc. #62 at 22-23. Specifically, plaintiff contends that: (1) "none of the issues decided [by the ERB] are identical to the issues raised in this action[;]" and (2) plaintiff's "selective enforcement claim is distinct because it relies on her being selectively treated, based on impermissible considerations. It is not dependent on her termination being retaliatory for her exercise of protected activity." Id. at 23 (citations omitted).

Plaintiff asserts in the Complaint that defendants "intentionally singled [her] out ... for adverse treatment that was entirely irrational and wholly arbitrary as compared to other Regional Managers similarly situated to" plaintiff. Doc. #1 at 35, ¶177. In support of this assertion, plaintiff alleges that defendants had previously violated section 46a-83(j) but "did not discipline themselves or terminate their own employment for violating" that same statute. Doc. #1 at 30, ¶150. This is identical to the argument raised by plaintiff in her ERB post-

---

[12] "Connecticut has abandoned the rule of mutuality, meaning that even parties that were not actually adverse to one another in the prior proceeding may nonetheless assert collateral estoppel." Faraday v. Blanchette, 596 F. Supp. 2d 508, 515 (D. Conn. 2009).

hearing brief. see Doc. #63-1 at 14-15 ("Despite these disclosures, neither Sharp nor Hughes were investigated for violating the statute, much less disciplined. ... Here, Wallace has presented evidence that she was punished for violating Section 46a-83(j), while Sharp and Hughes, who violated the same statute, were not[.] ... This was a violation of Wallace' equal protection rights." (sic)). The ERB rejected this argument, specifically finding that the "two disclosures were as different as night and day[]" and that "there has been no selective enforcement of this statute[.]" Doc. #59-11 at 6-7.

Plaintiff also alleges that her "personal use of her state-issued computer and email account was similar to that of CHRO's other three Regional Directors, none of whom were investigated or disciplined for such personal use." Doc. #1 at 31, ¶154.[13] Plaintiff appears to abandon this theory in her opposition to defendants' motion for summary judgment, instead contending:

> When a CHRO employee was actually caught using state resources during work hours, no discipline was taken against that employee for his misconduct. Specifically

---

[13] Plaintiff testified that she has no personal knowledge of any other Regional Manager improperly using State computer systems and equipment. See Doc. #59-6, Wallace Tr. at 15:6-20:13. Her vague statements to the contrary in her affidavit do not create an issue of material fact on this point. See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create a material issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").

> while she was Regional Manager, Wallace supervised an
> employee who was caught running a personal real estate
> business while at work at CHRO. Wallace reported the
> misconduct to Sharp, and Sharp took no action on the
> report.

Doc. #62 at 7-8. This is identical to the argument raised by

plaintiff in her ERB post-hearing briefing:

> On two occasions, both Hughes and Sharp were made aware
> of an employee conducting side business on state time,
> using his state computer. ... Although both Hughes and
> Sharp were aware of the incident, neither took any
> action. ... This is another case of selective
> enforcement of the rules by the CHRO, in violation of
> Wallace's equal protection rights. Once again, she has
> presented evidence of a similarly situated employee who
> was not disciplined, and the differential treatment was
> based on an impermissible motive, retaliation for having
> complained about the use and dissemination of incorrect
> case closure statistics.

Doc. #63-1 at 16 (citations to the administrative record

omitted). The ERB "reject[ed] this argument as simply not

persuasive in view of the enormity of non-State business being

conducted by Wallace on the State's computer both in terms of

scope and outside contacts as well as the daily volume of

contacts." Doc. #59-11 at 7.

For the reasons stated, the ERB considered and decided the

issue of selective treatment and specifically rejected the

allegation that plaintiff, compared with others similarly

situated, was selectively treated in violation of the Equal

Protection Clause. These findings should be given effect. No

valid reason to discount or disregard them has been presented.

34

To reiterate, to prevail on her claim for selective enforcement pursuant to LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980), plaintiff "must show that (1) [she], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Martin, 505 F. Supp. 3d at 134-35 (citation and quotation marks omitted). For the reasons previously stated, plaintiff is collaterally estopped from relitigating the issue of whether she was selectively treated compared with others similarly situated, which is the first required element. Accordingly, because plaintiff cannot establish an element of her selective enforcement claim, see Martin, 505 F. Supp. 3d at 134-35, defendants' motion for summary judgment on Count Three of plaintiff's Complaint alleging an Equal Protection Clause violation is **GRANTED**.[14]

---

[14] Even if collateral estoppel did not preclude plaintiff from relitigating the issue of selective treatment, there is no evidence to support plaintiff's assertion that she "was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Hu, 927 F.3d at 96. Indeed, "while [plaintiff's] minimal allegations concerning the resemblance between [herself] and [her] proffered comparators may have satisfied the plausibility standard to survive a motion to dismiss, the standard at summary judgment is much higher. At the summary judgment stage, plaintiff[] must present evidence comparing [herself] to individuals that are similarly situated."

C.   <u>Defamation</u>

Count Six of the Complaint asserts a claim for defamation against defendants. <u>See</u> Doc. #1 at 37. Plaintiff alleges: "Sharp and Hughes knowingly, intentionally and maliciously publicized false statements, both verbal and written, regarding Wallace to, <u>inter alia</u>, the Commissioners of the CHRO, which were harmful and injurious to Wallace's business reputation." <u>Id.</u> at ¶191.

> To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

<u>Gambardella v. Apple Health Care, Inc.</u>, 969 A.2d 736, 742 (Conn. 2009) (citation and quotation marks omitted).

> [I]n Connecticut, to be actionable in defamation, the offending statement must convey an objective fact rather than an opinion. A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being

---

Hu v. The City of New York, No. 17CV02348(ARR)(JRC), 2022 WL 182360, at *9 (E.D.N.Y. Jan. 20, 2022) (citations and quotation marks omitted) (alterations added). "To show that [s]he was similarly situated to another person treated differently, the plaintiff's and the comparator's circumstances must bear a reasonably close resemblance." Duguid v. State Univ. of New York at Albany, No. 1:17CV01092(TJM)(DJS), 2021 WL 2805637, at *12 (N.D.N.Y. July 6, 2021). Plaintiff has failed to present evidence of comparators who bear a "a reasonably close resemblance[]" id., to plaintiff's circumstances, such that a reasonable juror could find in favor of plaintiff's selective enforcement claims. Accordingly, summary judgment would be granted on this issue even without the application of collateral estoppel.

> known.   An   opinion,   on   the   other   hand,   is   a
> personal comment about another's conduct,
> qualifications or character that has some basis in fact.

CSL Silicones, Inc. v. Midsun Grp. Inc., 301 F. Supp. 3d 328,

376 (D. Conn. 2018) (citations and quotation marks omitted).

"Statements of opinion, even if negative or otherwise harmful,

cannot, as a matter of law, form the basis for a defamation

claim." Chiaravallo v. Middletown Transit Dist., --- F. Supp. 3d

---,   No. 3:18CV01360(SRU), 2021 WL 4310662, at *18 (D. Conn.

Sept. 22, 2021).[15]

> Whether the alleged statements are statements of opinion
> or of objective fact is a threshold question, and if the
> statements   are   opinions,   then   the   claim   must   be
> dismissed.  The determination of whether a statement is
> one of opinion or objective fact is a matter of law
> unless the statement is ambiguous; in that case the
> determination is a question of fact for the jury.

Lopos v. City of Meriden Bd. of Educ., No. 3:04CV00352(AWT),

2006 WL 1438612, at *8 (D. Conn. May 16, 2006).[16] The

---

[15] "Merely because a statement is phrased as an opinion does not,
however, mean that it is not actionable. Connecticut courts have
generally found that one must look at the context and the
implications of the statement when determining if it was
actionable or not." Sweeney v. Faracalas, No. CV-09-5029383,
2010 WL 1508305, at *4 (Conn. Super. Ct. Mar. 10, 2010).

[16] "The Supreme Court of Connecticut has never explicitly stated
whether it is for the court or the trier of fact to determine
whether an allegedly defamatory statement is one of fact or
opinion. However, there is support for the proposition that in
Connecticut this determination is one of fact for the trier of
fact." Sweeney, 2010 WL 1508305, at *4; see also Morron v. City
of Middletown, 464 F. Supp. 2d 111, 117 (D. Conn. 2006)

"determination of the truthfulness of a statement is a question of fact for the jury." Chiaravallo, 2021 WL 4310662, at *18 (citation and quotation marks omitted).

Defendants contend that it is unclear what the alleged defamatory statements were, and to whom they were made. See Doc. #59-2 at 28-29. However, since the motion to dismiss phase, plaintiff has asserted that certain statements contained in the two 2017 counseling memorandums and 2017 PARS review were false. See Doc. #34 at 23 (citing Doc. #1 at ¶¶107, 108, 113-14). Plaintiff reasserts this in her declaration and statement of additional material facts. See Doc. #62-1 at 33-35; Doc. #62-2 at 4-8.

Plaintiff asserts that defendants, in addition to making negative assessments of her work performance, made false factual allegations of misconduct. See Doc. #62-1 at 33-35. Some courts have found that "statements concerning work performance are merely expressions of opinion and, therefore, are not actionable as defamation." Grossman, 131 F. Supp. 2d at 312. The Connecticut Supreme Court has found that statements which "charge improper conduct or lack of skill or integrity in one's profession or business and are of such a nature that they are

("[T]he state of Connecticut recognize[s] that determining the nature of an alleged defamation is highly contextual.").

calculated to cause injury to one in his profession or business are defamatory." Gaudio v. Griffin Health Servs. Corp., 733 A.2d 197, 211 (Conn. 1999) (citation and quotation marks omitted).

The Court addresses each of the alleged defamatory writings in turn.

First, as to the May 1, 2017, counseling memorandum, plaintiff states in her declaration that "Sharp sent" this document. Doc. #62-2 at 4, ¶16. There is no evidence that defendant Hughes made any of the statements contained in the May 1, 2017, counseling memorandum. Indeed, the document itself reflects that it was sent by Sharp and only copied to Hughes. See Doc. #59-14. Plaintiff offers no evidence that Hughes personally placed this document in plaintiff's personnel file, stating only that the memorandum "was placed in [her] personnel file." Doc. #62-2, at 4, ¶16. Plaintiff's testimony that she "thinks" Hughes made such statements is not enough to overcome summary judgment given the other evidence of record. Additionally, the statements in this memorandum that plaintiff claims are defamatory are non-actionable opinion. The May 1, 2017, memorandum constitutes an expression of Sharp's opinion about plaintiff's employment performance. See Doc. #59-14.[17] A

---

[17] The May 1, 2017, counseling memorandum contains what may present as factual statements. "[A]lthough an opinion may appear to be in the form of a factual statement, it remains all opinion

plain reading of the memorandum reflects that it "is a personal comment about [plaintiff's] conduct, qualifications or character that has some basis in fact[,]" and therefore non-actionable opinion. Coleman v. S. Cent. Conn. Reg'l Water Auth., No. 3:06CV01515(RNC), 2009 WL 350597, at *5 (D. Conn. Feb. 12, 2009). Indeed, the memorandum is entitled: "Counseling Memorandum for Job Performance." Doc. #59-14. Accordingly, defendants' motion for summary judgment is **GRANTED** on all claims for defamation arising from the May 1, 2017, counseling memorandum. See, e.g., Iosa v. Gentiva Health Servs., Inc., 299 F. Supp. 2d 29, 38 (D. Conn. 2004) ("The statement that there were 'serious concerns' about Plaintiff's performance is an opinion by McQuay about the adequacy of Plaintiff's work[,]" and "cannot as a matter of law be defamatory."); McClain v. Pfizer, Inc., No. 3:06CV01795(WWE), 2008 WL 681481, at *8 (D. Conn. Mar. 7, 2008) ("Statements regarding Hambor's perception that McClain was overly sensitive, that he disagreed with her opinion in a group meeting, or that her work did not meet expectations are expressions of opinion and not statements of fact and cannot state a claim of defamation.").

---

if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated[.]" Sweeney, 2010 WL 1508305, at *4 (citation and quotation marks omitted).

The statements contained in the May 4, 2017, counseling memorandum with which plaintiff takes issue are similarly nonactionable opinion.[18] See Doc. #62-1 at 34-35, ¶17. Indeed, plaintiff concedes that the May 4, 2017, memorandum is the opinion of Sharp. Plaintiff states: "It is admitted that the counseling memorandum contains defamatory conjecture that is solely the **opinion** of Sharp." Doc. #62-1 at 10, ¶¶38, 39 (emphases added). As previously stated, opinion is not actionable. Accordingly, defendants' motion for summary judgment is **GRANTED** on all claims for defamation arising from the May 4, 2017, counseling memorandum.

Last, plaintiff states that "in December 2017 Cheryl Sharp and Tanya Hughes created another inaccurate negative PARS review of my performance, which was placed in my personnel file." Doc. #62-2 at 7, ¶22. Plaintiff contends that the 2017 PARS "contained defamatory statements," which implicated plaintiff's effectiveness as a manager. Id. There is a genuine issue of

---

[18] As was true of the May 1, 2017, counseling memorandum, plaintiff fails to proffer any evidence that defendant Hughes engaged in any defamatory conduct with respect to the May 4, 2017, counseling memorandum. Plaintiff states in her declaration that "Sharp sent" this document. Doc. #62-2 at 6, ¶20. There is no evidence that defendant Hughes made any of the statements contained in the May 4, 2017, counseling memorandum, or placed it in plaintiff's personnel file. See id. Indeed, the document itself reflects that it was sent by Sharp and only copied to Hughes. See Doc. #59-15.

material fact as to whether Hughes "created" the 2017 PARS
review. Defendants state that Hughes "reviews but does not
complete the performance evaluations of CHRO managers." Doc.
#59-1 at 4, ¶23. Plaintiff denies this fact. See Doc. #62-1 at
5, ¶23.

There also remains a genuine issue of fact as to whether
the data underlying the 2017 PARS was falsified for the purpose
of issuing a negative PARS review. See #59-1 at 8, ¶¶40-43; Doc.
#62-1 at 10-11, ¶¶40-43; Doc. #59-16. Viewing the evidence in
the light most favorable to plaintiff, a reasonable jury could
conclude that that the 2017 PARS review "charge[d] improper
conduct or lack of skill or integrity in one's profession or
business and [is] of such a nature that [it is] calculated to
cause injury to one in his profession or business." Gaudio, 733
A.2d at 211. Accordingly, defendants' motion for summary
judgment as to plaintiff's claims of defamation arising from the
2017 PARS is **DENIED**.

## V.   Conclusion

For the reasons stated, defendants' Motion for Summary
Judgment [**Doc. #59**] is **GRANTED, in part, and DENIED, in part**, as
follows:

Summary judgment is **GRANTED** in favor of defendants on Count
Three of the Complaint asserting denial of equal protection of

the laws in violation of the Fourteenth Amendment to the United States Constitution.

Summary judgment is **GRANTED** in favor of defendants as to claims of defamation relating to the May 1, 2017, counseling memorandum, and the May 4, 2017, counseling memorandum.

Summary judgment is **DENIED** as to plaintiff's claims of defamation relating to the 2017 PARS evaluation.

Accordingly, this case will proceed to trial on plaintiff's defamation claim relating to the 2017 PARS evaluation. The Court's Pretrial Memorandum Order will separately issue.

It is so ordered at New Haven, Connecticut, this 11th day of February, 2022.

                              _____/s/_____
                              HON. SARAH A. L. MERRIAM
                              UNITED STATES DISTRICT JUDGE